JOHN A. EGAN and FLORENCE L. EGAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Egan v. Commissioner
Docket No. 7640-80.
United States Tax Court
T.C. Memo 1982-574; 1982 Tax Ct. Memo LEXIS 167; 44 T.C.M. (CCH) 1296; T.C.M. (RIA) 82574; September 30, 1982. John A. Egan, pro se. Patti M. Stein, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Chief Judge: Respondent determined a deficiency of $792.00 in petitioners' Federal income tax for the taxable year ended December 31, 1977, and an addition to tax of $6.57 under section 6651(a) of the Internal Revenue Code of 1954[1] for the late filing of the return for that year. The issues for our decision are: (1) what contributions petitioner made to a pension plan; (2) when the second distribution from the plan was received by petitioner; (3) whether the late filing of petitioner's return was due to reasonable cause. [2]
FINDINGS *169 OF FACT Some of the facts have been stipulated and are found accordingly. John A. and Florence L. Egan resided in Mt. Kisco, N.Y., at the time they filed their petition in this case. Florence L. Egan is a party to this proceeding solely because she signed the joint return. John Egan (petitioner) was, at all relevant times, an employee of Countywide Gas Service, Inc. (Countywide). The corporation was solely owned by its president, William H. Frank. countywide's principal place of business was in Armonk, N.Y. In November 1967, Countywide established a whole life insurance plan for its employees at reduced cost, with each employee and Countywide sharing equally the premium cost of the insurance on the life of the employee. Petitioner elected to participate in the coverage under Countywide's proposal and his paychecks were reduced accordingly. In November 1972, Countywide, having decided to establish a pension plan, withdrew its support from the whole life insurance plan (the first plan). Each employee was given his policy and presented with the option either to continue the policy himself or surrender the policy and receive its cash surrender value. No option of rolling *170 over a policy's cash surrender value into the pension plan was presented to any employee. Petitioner elected to surrender his policy, which had a cash surrender value of $569.33. Concurrently, Countywide established the Countywide Gas Service, Inc., Pension Trust Plan (trust, pension plan, or second plan), which was qualified under section 401(a) and exempt under section 501(a). From the inception of the pension plan in November 1972 until April 30, 1974, contributions to the trust were made by both the employer and the employee. Petitioner contributed $360.70 to the trust during this period. [3] After April 30, 1974, all contributions to the trust were made by Countywide. On December 31, 1976, Countywide terminated the pension plan. At that time, petitioner had a vested right to 40 percent of his actuarial share of the plan's assets. After the plan's *171 termination, Countywide's agent determined how the trust's assets were to be divided and that petitioner was entitled to 2 percent of the trust fund's assets. Petitioner received $3,252.55, in two checks, from the trust. The first check, for $2,123.89, was dated August 13, 1977, and cashed by petitioner on August 15, 1977. The second check, for $1,128.66, was dated December 22, 1977, received by the petitioner before the end of that year, and cahsed by petitioner on January 5, 1978. Petitioner's 1977 Federal income tax return was filed on April 26, 1978. No part of the trust disbursements to him was included by petitioner in his gross income. OPINION This case presents three factual issues: (1) what contributions did petitioner make to the pension plan; (2) when did he receive the second distribution from the trust; (3) was the late filing of petitioner's return due to reasonable cause? The burden of proof as to each issue is on the petitioner. Rule 142(a). Petitioner received $3,252.55 from Countywide's qualified employee trust. Respondent has determined that petitioner is entitled to exclude $360.70, as employee contributions, from the distribution and should be *172 taxed under section 72(e)(1)(B) on the remaining $2,891.85. Petitioner argues, however, that he contributed $2,200 towards his pension and should be taxed on only $1,052.55. Petitioner contends that he made contributions towards the pension plan from November 1, 1967, until April 30, 1974. It is clear to us that any contributions prior to November 1, 1972, went towards a life insurance rather than a pension plan and that this plan was terminated and petitioner received the benefits thereunder prior to the taxable year at issue herein. Petitioner's claim that his contributions to the first plan were rolled over and became contributions to the second plan is simply not supported by the record herein. Petitioner's testimony is insufficient to carry his burden of proof, particularly in view of the contrary testimony of William Frank, one of the plan's administrators and trustees, that petitioner's contributions could not possibly have been rolled over because the rollover option was never presented to Countywide's employees, a statement which is corroborated by an insurance form which indicates that petitioner surrendered his life insurance policy under the first plan for its cash *173 surrender value. As to the period between November 1972 and April 1974, respondent's position is that petitioner made contributions of $360.70. Petitioner presents two separate arguments as to why respondent's figure is too low. Petitioner first contends that he could not possibly have contributed only $360.70, since he received $3,252.55 for his 40-percent vested rights. The mere existence of such a disparity is not sufficient to sustain petitioner's position, particularly in view of the uncontradicted evidence that Countywide made large contributions to the pension trust between November 1972 and April 1974 and 100 percent of the contributions thereafter.
Petitioner also argues that a discrepancy between Countywide's records, which show petitioner's contributions for the first four months of 1974 as $82, and an Internal Revenue Service 1099R Form prepared by the pension plan trustees, which appears to show petitioner's contributions for the same period as $113.54, "proves" the unreliability of Countywide's records. Here again the existence of such a discrepancy is insufficient in and of itself to carry petitioner's burden of proof. In the first place, even accepting respondent's *174 concession that the $113.54 represents pension contributions and that this indicates an error in Countywide's books for 1974, petitioner has presented no evidence as to what the correct figure for 1974 should be. Nor has he presented any evidence as to errors in 1972 and 1973 or as to what the correct amount of his contributions during these years might have been. On the record before us, we are left with no choice but to conclude that petitioner has not carried his burden of proving contributions to his pension in excess of $360.70. The second issue is when the second distribution from the trust was received by petitioner. Respondent has determined that petitioner received the second check in December 1977. Petitioner contends that he did not receive it until January 1978. The check in issue was dated December 22, 1977, and mailed from Armonk, N.Y. Frank testified that he maintained a normal business practice of dating checks within one day of the actual date and mailing them promptly. If Frank followed his normal business practice, the check would have been mailed no later than December 24, 1977. If the check was, in fact, mailed on that date from Armonk, N.Y., it is *175 most unlikely, notwithstanding the problems faced by the Postal Service during the Christmas season, that the check would not have reached Mt. Kisco, N.Y., before December 31. In any event, there is no evidence of record to support a conclusion that mail was in fact delayed. Petitioner contends that he received the check on January 2, 1978. Petitioner further contends that it is his practice not to "hold" checks. The check was cashed on January 5, 1978. The burden of proving that the check was received in January 1978 is on petitioner. Petitioner has given us no reason to doubt that Frank followed his normal business practice; he has, however, given us reason to doubt that he followed his own normal practice. Although petitioner claims that he does not hold checks, he admits to having held this one for three days after receiving it. [4] We hold that petitioner has failed to carry his burden of proof that he did not receive the second check in 1977. The final issue is whether petitioner's failure to *176 timely file his 1977 return was due to reasonable cause. The only justification petitioner offers for his late filing is that he was working 14 hours per day, five days a week, and had difficulty finding time to get his return out. A plea of "too busy" is insufficient to relieve petitioner of his obligation to timely file. Dustin v. Commissioner,53 T.C. 491, 507 (1969), affd. 467 F.2d 47 (9th Cir. 1972). Consequently, respondent's determination of an addition to tax for late filing under section 6651(a) is sustained. In order to reflect a concession by respondent, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue and all references to Rules are to the Tax Court Rules of Practice and Procedure. ↩
2. A fourth issue is to what extent petitioner's medical expenses for 1977 are deductible. Computation of the allowable deduction will follow automatically from our determination of the first two issues.↩
3. According to Countywide's records, petitioner contributed $17.18 per month from November 1, 1972, to October 31, 1973, and $20.50 per month from November 1, 1973, to April 30, 1974, for a total of $329.16. Respondent concedes, however, that during the first four months of 1974, petitioner's contributions were $113.54.↩
4. The petitioner apparently held the first check for, at most, one day. The check was dated August 13, 1977 (a Monday) and cashed by petitioner on August 15, 1977.↩